In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00222-CV
_____

**JACPEN PROPERTIES, LLC, Appellant**

**V.**

**WATERFRONT DEVELOPMENT, LLC, CHARLES VON SCHMIDT AND VACATION HOME BUILDERS, INC., Appellees**

**On Appeal from the 411th District Court**
**Polk County, Texas**
**Trial Cause No. CIV29515**

**MEMORANDUM OPINION**

JacPen Properties, LLC appeals the trial court's summary judgment in favor of Waterfront Development, LLC, Charles Von Schmidt, and Vacation Home Builders, Inc. (collectively "Appellees"). JacPen presents three issues on appeal asserting: (1) the trial court erred in granting final summary judgment on the issue of res judicata because the indemnity and/or guaranty claims raised in this lawsuit did not ripen until after the trial court granted summary judgment against it in a prior

1

lawsuit; (2) the trial court erred in granting summary judgment for Appellees because the indemnity and guaranty claims were based on documents that provided the broadest protections possible to JacPen and specifically allocated any risk of loss to Appellees; and, (3) the trial court erred in granting summary judgment for Appellees because the indemnity provision and guaranty agreement remained enforceable by JacPen even though the underlying loan agreement was not enforceable against the actual borrower. We affirm the trial court's judgment.

## I. Background

In 2006, Von Schmidt met Jack and Rowanne "Penny" Uselton when Von Schmidt remodeled their home. The Useltons and Von Schmidt thereafter agreed to partner to develop a subdivision near Lake Livingston in Polk County, Texas. Von Schmidt formed Waterfront as the operating entity for the development, and the Useltons formed JacPen.[1] The members of Waterfront were JacPen and Vacation Home Builders, with each owning a fifty percent interest.[2]

On October 1, 2008, JacPen assigned its ownership interest in Waterfront to Von Schmidt. In addition to the Transfer and Assignment of Limited Liability

---

[1] JacPen initially had two members, Jack and Penny Uselton. In 2007, the SEC indicted Jack for securities fraud. Thereafter, Jack assigned his interest in JacPen to Penny, who became the sole member.

[2] Von Schmidt was the president of Vacation Home Builders, Inc.

2

Company Interest, the parties executed four documents: (1) a Promissory Note; (2) a Deed of Trust; [3] (3) Charles Von Schmidt's Personal Guaranty Agreement; and (4) a Loan and Security Agreement.

With JacPen as the "Lender" and Waterfront as the "Borrower," the Loan and Security Agreement was executed in the amount of $3,077,424.94. Von Schmidt personally guaranteed the debt up to $1,077.424.94 in his Personal Guaranty Agreement. The Loan and Security Agreement contained an indemnity provision providing that

> Borrower agrees to protect, indemnify, defend and save harmless Lender and its affiliates, directors, officers, agents and employees from and against any and all liability, expense or damage of any kind or nature and from any suit, claims, or demands, including, without limitation, reasonable legal fees and expenses on account of any matter or thing or action or failure to act of the Borrower, whether in suit or not, arising out of this Loan Agreement, the Loan, the Deed of Trust or in connection herewith or therewith unless said suit, claim or damage is caused by the gross negligence or willful malfeasance of Lender. This indemnity is not intended to excuse either party from performing hereunder. This obligation shall survive the closing of the Loan and the repayment thereof.

---

[3] Waterfront did not execute the Deed of Trust and Security Agreement until October 30, 2008.

## II. Procedural History

### A. First Lawsuit

JacPen sued Waterfront, Von Schmidt, and Vacation Home Builders in 2014 in trial cause number CIV27570 (the "first lawsuit"). JacPen alleged in its Second Amended Petition that on or about October 1, 2008, JacPen transferred its interest in Waterfront to Von Schmidt, and in consideration for its interest, Waterfront agreed to pay JacPen $3,077,424.94. JacPen claimed that Waterfront defaulted on the payment and sued to collect the balance due under the note, including principal and interest. JacPen expressly referenced the October 1, 2008 Promissory Note, the Loan and Security Agreement, the Commercial Loan Agreement, and the Deed of Trust and Security Agreement. Additionally, JacPen alleged that Von Schmidt executed a written guaranty in the amount of $1,077,424.94 dated October 1, 2008, and sought recovery against Von Schmidt on his guaranty.

In the first lawsuit, JacPen (1) sought payment of the promissory note owed by Waterfront against both Von Schmidt and Vacation Home Builders, (2) alleged that the three had commingled funds and sought to disregard the corporate entity, and (3) claimed that the defendants were jointly and severally liable. JacPen also sought foreclosure of all lots described in the deed of trust and security agreement, the proceeds of which would be applied to the claimed indebtedness. JacPen prayed

4

that it "recover judgment of and from Defendants for all sums due under the Promissory Note dated October 1, 2008 in the original principal sum of $3,077,424.94; judgment on the guaranty against Charles von Schmidt, Individually, [and] judgment against all Defendants jointly and severally." The trial court ultimately granted Appellees' Traditional Motion for Summary Judgment and entered a Final Take-Nothing Judgment.

## B. Current Lawsuit

Within six months of the entry of judgment against JacPen in the first lawsuit, it initiated the present suit in trial cause number CIV29515 against the same defendants. JacPen alleged causes of action for breach of the indemnity agreement contained in the Loan and Security Agreement and for breach of the personal Guaranty Agreement. JacPen alleged that the trial court in the first suit entered a judgment in favor of the three defendants. JacPen further claimed that the consideration recited in the Loan and Security Agreement finalizing the parties' land development deal before interest was $3,077,424.94, and it had been damaged in the total amount of $4,323.560.46.

In the current suit, JacPen claimed that the cause of action for breach of the indemnity provision contained in the Loan and Security Agreement did not accrue until the trial court granted Appellees' summary judgment in the first suit. JacPen

5

contended that the indemnification clause is broad and "does not preclude recovery for damages incurred as a result of suits between [the] parties[.]" Again, JacPen sought to disregard the corporate entities and hold all three defendants liable. In the current suit, JacPen also asserted a claim for breach of the personal Guaranty Agreement against Von Schmidt in the amount of $1,077,424.94.

Appellees filed a Traditional Motion for Summary Judgment, which the trial court denied. Appellees later filed an Amended Traditional Motion for Summary Judgment, arguing JacPen's claims in the current suit were barred by res judicata, or in the alternative, JacPen's suit was barred because the indemnity provision does not apply to claims between the parties. Appellees argued further in the alternative that even if the indemnity provision applied, they were still entitled to summary judgment because the indemnity provision was not triggered in this case. The trial court granted Appellees' Amended Traditional Motion for Summary Judgment without specifying the basis and subsequently entered a Final Summary Judgment disposing of all claims and parties. JacPen timely appealed.

### III. Standard of Review

We review a trial court's grant of a traditional motion for summary judgment under a *de novo* standard. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). The moving party has the burden to show with competent summary

6

judgment evidence, that no genuine issue of material fact exists, and it is entitled to summary judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). Res judicata is an affirmative defense. Tex. R. Civ. P. 94. When a defendant moves for summary judgment based on an affirmative defense, it must prove all essential elements of its defense. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008). When a trial court grants a summary judgment without specifying the basis, we will affirm if any one of the movant's theories has merit. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

## IV. Analysis

JacPen first contends that because the indemnity and/or guaranty claims raised in the present suit "did not ripen until after summary judgment had been granted[,]" they are not barred by res judicata. Res judicata, or claim preclusion, bars subsequent actions by parties and those in privity with them on matters litigated in a previous suit and on claims "'which, through the exercise of diligence, could have been litigated in a prior suit.'" *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799 (Tex. 1992) (quoting *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992)); *see also Hallco Tex., Inc. v. McMullen Cty.*, 221 S.W.3d 50, 58 (Tex. 2006).

7

Courts apply a "transactional approach" to res judicata that requires claims arising from the same subject matter to be litigated in a single lawsuit. *Hallco*, 221 S.W.3d at 58; *Barr*, 837 S.W.2d at 631. Court precedent recognizes that res judicata promotes the finality of judgments, and prevents "needless, repetitive litigation[.]" *Hallco*, 221 S.W.3d at 58 (citing *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 345 (2005); *John G. and Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 288–89 (Tex. 2002)). A party relying on the affirmative defense of res judicata must prove: (1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

Appellees provided the following summary judgment evidence: (1) the Loan and Security Agreement; (2) Plaintiff's Second Amended Petition in the first suit filed on March 10, 2014; (3) Plaintiff's Supplement to its Second Amended Petition in the first suit, which included the Loan and Security Agreement, the Promissory Note, the Deed of Trust, and Von Schmidt's Personal Guaranty; (4) a Commercial Loan Agreement dated April 1, 2008; (5) JacPen's demand letters to Waterfront; (6) the Order granting Defendants' Traditional Summary Judgment in the first suit; (7) the Final Judgment in the first suit; and (8) JacPen's First Amended Petition in the

current suit. JacPen does not dispute that a court of competent jurisdiction in the first suit made a determination on the merits or that the parties are identical in the current lawsuit as in the first. JacPen's argument on appeal goes to the third element of Appellees' res judicata affirmative defense. Specifically, it contends that its claims for breach of the indemnity provision in the Loan and Security Agreement and Von Schmidt's breach of the Personal Guaranty did not ripen until judgment was rendered against it in the first suit. Therefore, JacPen argues the claims in the second action could not have been raised in the first action.

"[F]actors to consider in determining whether facts constitute a single 'transaction' are 'their relatedness in time space, origin, or motivation, and whether, taken together, they form a convenient unit for trial purposes.'" *Getty*, 845 S.W.2d at 798–99 (quoting Restatement (Second) of Judgments § 24 cmt. b (1980)). JacPen's claims for breach of the indemnity provision and personal guaranty arose out of the same real estate transaction. While JacPen seeks to enforce a specific indemnity provision in the current suit, it relies on identical documents in both suits. Ultimately, JacPen sued the same parties in the current lawsuit seeking repayment of the same money it claimed to have loaned Waterfront in the first lawsuit. No matter the theory of recovery, the underlying transaction giving rise to the dispute is the same, and the relief JacPen seeks is the same.

Although JacPen argues that its claims for breach of the indemnity provision and the personal guaranty did not ripen until it received a judgment against it in the second suit, the indemnity provision it relies on was a part of the Loan and Security Agreement that JacPen claimed Appellees breached in the first suit. Likewise, in the first suit, JacPen litigated Von Schmidt's liability on his personal guaranty. Although JacPen's theories of recovery may have been different, what it sought to recover from Appellees and how the dispute arose in each suit was the same.

We will assume, without deciding, that the indemnity provision at issue applied to claims between the parties. Generally, a cause of action for indemnity accrues when "'the indemnitee's liability to the party seeking damages becomes fixed and certain, generally by a judgment.'" *Am. Star Energy & Minerals Corp v. Stowers*, 457 S.W.3d 427, 432–33 (Tex. 2015) (quoting *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 208 (Tex. 1999) (internal quotations omitted)); *see also Gunn v. McCoy*, 554 S.W.3d 645, 677–78 (Tex. 2018). However, an indemnitee may bring a claim against an indemnitor before a judgment—before the cause of action accrues and before limitations begins to run. *Gunn*, 554 S.W.3d at 678 (citing *Stowers*, 457 S.W.3d at 432–33). "[O]ur law does not require that a judgment be fixed and payable on appeal in order to sustain a claim for indemnity." *Id.*

While JacPen's cause of action for indemnity may not have accrued until the judgment, nothing precluded JacPen from bringing its indemnity claim against Appellees in the first suit. *See id.* In *Getty Oil*, the Texas Supreme Court rejected the argument that res judicata did not bar the appellant's present indemnity claims because the claims did not accrue until judgment was rendered against it in the first suit. 845 S.W.2d at 799. The Court noted that the contingent nature of the indemnity claim does not preclude the operation of res judicata. *See id.* Courts have acknowledged that "[f]orcing the indemnity suit to wait for judgment in the liability suit 'would contravene the policy of the courts to encourage settlements and to minimize litigation.'" *See id.* (quoting *K&S Oil Well Serv., Inc. v. Cabot Corp.*, 491 S.W.2d 733, 739 (Tex. Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.)). A subsequent suit is barred when it arises from the same subject matter of the prior suit and which, through the exercise of diligence could have been litigated in a previous suit. *Barr*, 837 S.W.2d at 631.

With the exercise of diligence, JacPen's indemnity claim could have been litigated in the first suit. The claims arose out of the same set of circumstances, and JacPen sought payment under the same agreements for the same alleged wrongs. The law did not require JacPen to wait for a judgment before asserting its indemnity claim. *See Gunn*, 554 S.W.3d at 677–78. Moreover, despite its contention otherwise

11

on appeal, in the first suit, JacPen relied on Von Schmidt's personal guaranty as a basis for recovery and specifically requested "judgment on the guaranty against Charles Von Schmidt[.]" Thus, we determine that the action for breach of the indemnity provision could have been raised in the first lawsuit, and JacPen expressly asserted a claim for breach of the Guaranty Agreement against Von Schmidt in the first suit. *See Amstadt*, 919 S.W.2d at 652.

We overrule JacPen's first issue on appeal. Having determined that Appellees' affirmative defense of res judicata supports the trial court's grant of summary judgment as to all causes of action raised in the current suit, we need not address JacPen's remaining issues. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (holding that we must affirm summary judgment if any ground presented to the trial court is meritorious).

## V. Conclusion

We conclude JacPen's claims were barred by res judicata and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

12

Submitted on July 22, 2019
Opinion Delivered January 30, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.